# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| AIMEE LINGO AND BOBBY LINGO, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No: |
| ) | |
| vs. ) | |
| ) | |
| GENERAL MOTORS, L.L.C. ) | |
| ) | |
| Defendant. ) | |

## CIVIL COMPLAINT

Plaintiffs, Aimee Lingo and Bobby Lingo, by and through their undersigned attorneys, KRIVIT LAW, hereby submit the following Civil Complaint and assert:

## JURISDICTION AND VENUE

1. At all times relevant to this action, Plaintiffs resided in Douglas County, Colorado.

2. Upon information and belief, at all times relevant to this action, Defendant General Motors, L.L.C. was a Delaware limited liability company with its principal place of business located in Detroit, Michigan, and was authorized to do business in Colorado.

3. Upon information and belief, General Motors, L.L.C. was formerly known as General Motors Corporation and NGMCO, Inc. On July 10, 2009, General Motors, L.L.C. acquired substantially all of the assets of General Motors Corporation in a transaction executed under the jurisdiction and pursuant to approval of the United States Bankruptcy Court for the Southern District of New York. In acquiring these assets, General Motors, L.L.C. assumed responsibility for product liability claims involving products assembled or sold by General

1

Motors Corporation for claims arising from incidents that occurred after the July 10, 2009 closing date.

4. Defendant General Motors, L.L.C., f/k/a General Motors Corporation and NGMCO, Inc. is hereinafter collectively referred to as "Defendant," "GM," or "General Motors."

5. Defendant is in the business of designing, developing, manufacturing, testing, engineering, approving, assembling, fabricating, constructing, distributing, marketing, promoting, advertising, and selling automobiles and component parts of automobiles to the consuming public throughout the United States, including Colorado, and throughout the world.

6. At all relevant times, Defendant purposefully availed itself of the privilege of conducting business in the State of Colorado.

7. Defendant maintains a registered agent for service in Denver, Colorado: Corporation Service Company, 1560 Broadway, Suite 2090, Denver, CO 80202.

8. It was both predictable and foreseeable that the subject 2015 GMC Yukon XL ("Yukon") would be used in the State of Colorado.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is a civil action in which the parties are citizens of different states.

10. Venue is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b) as this is a District in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

# FACTUAL ALLEGATIONS

11. Plaintiffs incorporate all foregoing allegations.

12. This matter involves a sudden, unexpected, faulty and defective airbag deployment incident (the "Incident").

13. On or about August 8, 2019, Plaintiffs purchased a 2015 GMC Yukon, SLT ½ ton 4WD, from The Sharpest Rides, located at 2245 S. Raritan Street, Englewood, CO 80110.

14. As part of the sale, a Carfax report was obtained, which showed no prior airbag deployments.

15. Plaintiffs used and operated the Yukon without incident and without any airbag warnings, notices, issues or problems from the time of purchase until the Incident.

16. On October 13, 2019, at 9:32 p.m., Aimee Lingo was driving the Yukon and Bobby Lingo was a passenger. Aimee pulled up to the curb in front of their house, to drop Bobby off, as she was then going to pick up her daughter at another house. Aimee stopped the Yukon, and Bobby then exited the vehicle, and he closed the door.

17. At the exact moment that Bobby closed the door, several of the airbags in the vehicle instantaneously deployed with an extremely loud, sudden and violent expansion.

18. The plastic cover of the driver-side A-Pillar broke off and shot across the inside of the vehicle.

19. The driver's-side curtain airbag deployed, hitting Aimee Lingo in the head and injuring her eardrums.

20. The driver's-side curtain airbags deployed all along the length of the vehicle, however they only partially deployed and did not roll down all the way.

21. The passenger-side curtain airbags deployed all along the length of the vehicle.

22. The backs of the driver and passenger seats broke apart as a result of the airbag deployment.

23. Ceiling panels in the back of the Yukon fell as a result of the deployment.

24. The Yukon was not hit or contacted at any part, before or during the airbag deployment incident, nor was it ever hit or damaged during the entire time that Plaintiffs owned the vehicle.

25. Plaintiffs did not modify or repair the Yukon at any time prior to, or after the Incident.

26. Plaintiffs were never contacted by GM prior to the Incident regarding any issues with the airbags.

27. The Yukon's airbag safety features – which Plaintiffs depended upon to protect them -- suddenly, and without warning, deployed.

28. As a result of the airbag failures, Aimee Lingo suffered injuries, including but not limited to:

    a. a traumatic brain injury
    b. severe tinnitus
    c. severe left ear hearing problems
    d. post traumatic stress disorder
    e. left shoulder ligament tear
    f. daily headaches
    g. vision problems

29. Defendant publicly prides itself and advertises regarding its products' "quality and safety."

30. Defendant holds itself out to the public as a sophisticated entity, highly-involved in all aspects of the automobile industry, and as such, has the expertise and resources to ensure each vehicle, including the Yukon, that is designed, manufactured, and sold is free of defects and safe for consumers' use.

## *Damages*

31. Plaintiff continues to undergo significant medical and psychological treatment.

32. The acts and omissions of Defendant were the direct and proximate cause of Plaintiffs' injuries and damages.

33. As result of the Yukon's defect and malfunction, Aimee Lingo will require future physical and mental assistance and medical treatment including, but not limited to:

    a. physician care, including possible treatment by an orthopedic specialist, primary care physician, and neuropsychologist;
    b. routine diagnostic costs, including MRIs, X-rays, and audiograms;
    c. medications;
    d. rehabilitation services costs, including occupational therapy, cognitive neurorehabilitation, vocational evaluation, and an ongoing system of physical rehabilitation and conditioning.

34. As a direct and proximate result of the Yukon's failure, Plaintiff incurred past and future economic expenses, losses and damages, including, but not limited to, past and future medical expenses, wage loss, and other economic losses.

35. As a direct and proximate result of the Yukon's failure, Plaintiff suffered in the past, and will continue to suffer in the future, non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional stress, and impairment of quality of life.

36. As a direct and proximate result of the Yukon's failure, Plaintiff suffered in the past, and will continue to suffer in the future, temporary and permanent impairment, physical impairment, and disfigurement.

### FIRST CLAIM FOR RELIEF
#### Negligence – Aimee Lingo

37. Plaintiff incorporates all foregoing allegations.

38. Defendant, as a designer, manufacturer, and seller of the Yukon, pursuant to C.R.S. § 13-21-401, owed Plaintiff a duty to exercise reasonable care to prevent the Yukon from creating an unreasonable risk of harm to Plaintiff who might reasonably have been expected to use and be affected by the Yukon in the manner Defendant might have reasonably expected.

39. When the Yukon unexpectedly failed, it did so as a result of the negligent manner in which it was designed, manufactured, engineered, developed, tested, approved, fabricated, assembled, equipped, inspected, repaired, labeled, advertised, promoted, marketed, distributed, wholesaled, and sold.

40. In the course of designing and manufacturing the Yukon, Defendant negligently breached the acceptable standards of manufacture of goods, by its actions, including, but not limited to:

    a. negligently designing and manufacturing the Yukon;
    b. negligently designing and manufacturing, amongst other components, the airbags of the Yukon;
    c. negligently fabricating the Yukon;
    d. failing to exercise reasonable care to prevent the Yukon from creating an unreasonable risk of harm to the person or property of one who might reasonably be expected to use the Yukon while it was being used in the manner for which it was reasonably expected to be used;
    e. manufacturing an unsafe product, the Yukon;
    f. failing to manufacture the Yukon by using safer alternative designs and formulations, which were practicable, and could or would have eliminated the unsafe nature of the Yukon without impairing its usefulness.
    g. failing to ascertain and identify risks of using the Yukon;
    h. failing to test the Yukon before retail sale;
    i. inadequately inspecting at all phases of the manufacturing and fabrication of the Yukon; and
    j. failing to recall and/or remove the Yukon from the stream of commerce before it malfunctioned during Plaintiff's use.

41. Plaintiff was a person who Defendant should have reasonably expected to use and be affected by a defect in the Yukon.

42. Defendant knew or should have known in the exercise of reasonable care of the dangers of the Yukon's negligent design and manufacture as described above.

43. Defendant knew or should have known in the exercise of reasonable care of alternative designs that were technologically and economically feasible and that would better protect occupants from the negligently designed and manufactured defects described above, but Defendant chose not to incorporate these alternative designs.

44. As a result of Defendant's breach of the aforementioned duty, Plaintiff has sustained injuries, damages, and losses that were caused by Defendant's negligence, while the Yukon was being used in the manner Defendant should have reasonably expected.

45. The above listed breaches of duty is a direct and proximate cause of the injuries, damages, and losses sustained by Plaintiff.

46. As a direct and proximate result of Defendant's breaches of the aforementioned duty, Plaintiff has sustained injuries, damages, and losses as indicated above.

## SECOND CLAIM FOR RELIEF
### Strict Liability: Product Liability – Aimee Lingo

47. Plaintiff incorporates all foregoing allegations.

48. Defendant is a manufacturer and seller, pursuant to C.R.S. § 13-21-401, and is engaged in the business of manufacturing and selling vehicles, including the Yukon.

49. Defendant is a "manufacturer" of the Yukon under C.R.S. § 13-21-104(1), as it is an entity that designed, assembled, fabricated, produced, constructed, and prepared the Yukon prior to the sale of the Yukon.

50. Defendant is a "manufacturer" of the Yukon under C.R.S. § 13-21-104(1), as it is a seller who had actual knowledge of a defect in the Yukon.

51. Defendant is a "manufacturer" of the Yukon under C.R.S. § 13-21-104(1), as it is a seller of the Yukon who created and furnished a manufacturer with specifications relevant to the alleged defect for producing the Yukon.

52. Defendant is a "manufacturer" of the Yukon under C.R.S. § 13-21-104(1), as it is a seller of the Yukon who exercised significant control over all or a portion of the Yukon's manufacturing process.

53. Defendant is a "manufacturer" of the Yukon under C.R.S. § 13-21-104(1), as it is a seller of a vehicle who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer.

54. Defendant is a "seller" of the Yukon under C.R.S. § 13-21-104(3), as it is entity and manufacturer engaged in the business of selling or leasing any product, including the Yukon, for resale, use, or consumption.

55. The Yukon was expected to and did reach the user or consumer, including Plaintiff, without substantial change in the condition in which it was sold.

56. The Yukon was placed in the stream of commerce and reached Plaintiff in such defective condition without substantial change.

57. As a direct result of Defendant's design and manufacture The Yukon was defective. These defects include, but are not limited to:
    a. the failure of Defendant to incorporate designs and technologies that could have prevented the Yukon from catastrophically failing. Defendant was aware of such designs and technologies, including superior designs and technologies used by other manufacturers in other vehicles;
    b. the failure of the Yukon to prevent faulty and unexpected airbag deployment;
    c. the failure of the Yukon to protect Plaintiff from an unexpected deployment.

58. Under entirely foreseeable and predictable operating conditions, such as those of Plaintiff's at the time of the Yukon's failure, the Yukon should not catastrophically fail.

59. When the Yukon unexpectedly failed, it did so as a result of the design and manufacturing defects that existed within the Yukon at the time it was manufactured.

60. Defendant knew or should have known of the defective design and manufacture of the Yukon and that the Yukon was unreasonably dangerous.

61. Upon reasonable inspection and testing of the Yukon and each of its components, Defendant knew or should have known the Yukon was defective and unreasonably susceptible to failure.

62. Defendant knew or should have known of the defective design and manufacture of the Yukon and failed to take reasonable corrective steps in curing the defects.

63. Defendant had sufficient knowledge, expertise, availability, and resources to inspect the Yukon for defects prior to its sale.

64. Defendant failed to properly inspect and confirm the safety of the Yukon prior to its entry into the stream of commerce and sale.

65. Defendant failed to complete a reasonable inspection of the Yukon, which inspection would have revealed the unreasonably high potential for the failure of the Yukon.
66. Because of the Yukon's defects, the Yukon was unreasonably dangerous to Plaintiff who might be reasonably expected to use or be affected by the Yukon.
67. The Yukon was unreasonably dangerous because of a defect in its design and manufacture and created an unreasonable risk of harm to persons or property that would not ordinarily be expected.
68. The Yukon was unreasonably dangerous because of a defect in its design and manufacture and created an unreasonable risk of harm to persons or property that is not outweighed by the benefits to be achieved by such design.
69. The Yukon was defective at the time it was sold by Defendant or left Defendant's possession.
70. The defects in design, manufacture, and inspection made the Yukon unreasonably dangerous, unfit, and unsafe for its intended use and caused the Yukon to fail to perform as an ordinary user would expect when used in its intended and foreseeable manner.
71. Plaintiff was a person who would reasonably be expected to use or be affected by the Yukon.
72. The Yukon was manufactured without adequate quality control measures and using inappropriate manufacturing procedures.
73. Such inappropriate quality control measures and inappropriate manufacturing practices and procedures contributed to the in-use failure of the Yukon.

74. The Yukon was not assembled properly and reached Plaintiff in a condition unreasonably susceptible to failure.

75. As a direct and proximate result of the defect in the Yukon's design and manufacture, Plaintiff has sustained injuries, damages, and loss.

76. Defendant is strictly liable to Plaintiff for the injuries and damages caused by the above defects and inadequacies in the design and manufacture of the Yukon.

77. In the alternative, Defendant is a "manufacturer" of the Yukon under Colorado law because it is the apparent manufacturer of the Yukon.

78. When it placed the Yukon into the stream of commerce through advertising, distribution, and sale of the Yukon, Defendant conveyed to the public, including Plaintiff, that it had designed, manufactured, marketed, and sold the Yukon as its own.

79. Plaintiff relied upon Defendant's care in designing and manufacturing the Yukon.

80. Plaintiff relied upon Defendant's assurance to her that the Yukon was designed and manufactured without defect.

81. Defendant placed its private label on the Yukon with the intent of its private label carrying some weight of quality assurance.

82. Defendant placed its private label on the Yukon in order to capitalize upon and preserve Defendant's goodwill with the public, including Plaintiff.

83. Defendant's placement of the private label was made for Defendant's own benefit. The Yukon entered into the stream of commerce under Defendant's own direction.

84. Defendant did not place any other name on the Yukon indicating that any other person, firm, or entity was the designer and/or manufacturer of the Yukon.

85. Defendant's placement of its own private label on the Yukon is sufficient to impose strict liability upon Defendant.

86. Defendant's placement of its own private label is sufficient to subject it to the same liability as though Defendant were the Yukon's manufacturer.

87. As a direct and proximate result of Defendant placing its private label on the Yukon without disclosing if any other persons, firms, or entities were involved in the design or manufacture of the Yukon, Plaintiff has sustained injuries, damages, and loss.

88. Defendant is strictly liable to Plaintiff for the injuries and damages caused by Defendant's placement of its own private label on the Yukon without disclosing if any other persons, firms, or entities were involved in the design or manufacture of the Yukon.

### THIRD CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress – Bobby Lingo

89. Defendant GM was negligent in the design, manufacture, testing and production of the Yukon.

90. Defendant's negligence created an unreasonable risk of physical harm to Bobby Lingo.

91. Defendant's negligence caused Bobby Lingo to be put in fear for his own safety and such fear was shown by physical consequences.

92. Plaintiff Bobby Lingo suffered injuries, damages, and losses as a result of his fear.

### FOURTH CLAIM FOR RELIEF
### Loss of Consortium – Bobby Lingo

93. Defendant GM was negligent in the design, manufacture, testing and production of the Yukon.

94. Aimee Lingo, Bobby Lingo's spouse, was injured as a result of Defendant's negligence.

95. Aimee Lingo and Bobby Lingo were married at the time Aimee was injured.

96. As a result of such injuries to Aimee Lingo, Bobby Lingo also had, and continues to have a loss of his rights of consortium.

**WHEREFORE,** Plaintiffs, Aimee Lingo and Bobby Lingo pray for judgment against Defendant General Motors, L.L.C., in an amount to be determined by the trier of fact for her losses as set forth above and for costs, expert witness fees, filing fees, pre and post-judgment interest, and such other further relief as the Court may deem appropriate, just, and proper.

Respectfully Submitted, this 14th day of January 2021.

David W. Krivit
*Attorney for Plaintiffs*
KRIVIT LAW
44 Cook Street, Suite 100
Denver, CO 80206
Tel: 303-704-7625
Fax: 720-713-6378

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

|  |  |  |
|---|---|---|
| **AIMEE LINGO and BOBBY LINGO** | ) ) ) ) ) | |
| *Plaintiff(s)* | ) ) | |
| v. | ) ) | Civil Action No. |
|  | ) ) | |
| **GENERAL MOTORS, L.L.C.** | ) ) ) | |
| *Defendant(s)* | ) | |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

**GENERAL MOTORS, L.L.C.**

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____ , a person of suitable age and discretion who resides there, on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is designated by law to accept service of process on behalf of *(name of organization)* _____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: